UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ERIC LEE ROTH,<br>          Plaintiff<br><br>vs.<br><br>BOB WALTERS, MERS DOE,<br>GALE HANDER, TITLE DOE,<br>JULIE RISTY, FANNIE MAE DOE,<br>AMY FOLSOM, 1-5 DOES,<br>CHRIS LILLA,<br>          Defendants | 4:22-cv-4096<br><br>MEMORANDUM<br><br>AND ORDER |

Pending before the Court is Plaintiff's pro se "verified motion for default judgement [sic] on Bob Walters." (Doc. 19). Plaintiff alleges Bob Walters is the COO of Quicken Loans, housed in Detroit, MI. Plaintiff further alleges he arranged for service of summons on Walters and with "100 percent certainty" Bob Walters has received the Complaint. (Id., PgID 460). Bob Walters has filed a response to Plaintiff's motion for default judgment. (Doc. 27). He also has filed a motion to dismiss both for insufficient service of process, Rule 12(b)(5), and lack of personal jurisdiction, Rule 12(b)(2). (Doc. 23). Plaintiff has not responded to Walters' motion. For the following reasons, the Court denies Plaintiff's motion for default judgment (Doc. 19) and grants Defendant's motion to dismiss (Doc. 23).

1

## BACKGROUND

Plaintiff filed a lengthy Complaint against several Defendants, including employees of Minnehaha County, Wells Fargo Bank, Quicken Loans, and Doe Defendants.  (Doc. 1).  The Complaint is styled as a "Quiet Title Action." (Id.).  The first Cause of Action is captioned "Trespass on the case—Racketeer Influenced and Corrupt Organizations Law." (Id., PgID 17).  Count 2 is captioned "Trover—Negligence." (Id., PgID 19).  Count 3 is "Special Assumpsit—Breach of Contract." (Id.).  Count 4 is "Indebitatus Assumption—Vicarious Liability." (Id., PgID 20).  Plaintiff's RICO claim against Walters alleges, among many other things, breach of duty through extortion, fraud, and "lying about me being a person" (apparently in the context of definitions covering corporations). (Id., PgID 18).  Throughout his Complaint, Plaintiff challenges the existence and legitimacy of the monetary system in place in the United States.  With respect to Bob Walters, Plaintiff demands "general damages of 2,091,600.00 lawful dollars." (Doc. 1, PgID 21).  Plaintiff does not precede this figure with a dollar sign and appears to be seeking gold and silver.  He also seeks costs and attorney's fees.  (Id.).

Plaintiff states he entered into two loans with Quicken Loans, but alleges the company gave "no valuable consideration" because "FEDERAL RESERVE NOTES are not lawful money." (Id., PgID 3).  Accompanying Plaintiff's Complaint is a list of "federal questions" he has posed, "wherein he wishes to have

2

a declaratory judgement." (Doc. 1-1, PgID 22). He also attached a lengthy compilation of documents, (Doc. 1-2, 335 pages), including a warranty deed; insurance contract; mortgage and loan documents; a booklet entitled "Modern Money Mechanics"; an article entitled "The Mortgage Electronic Registration System (MERS)—The Dark [sic] Vader of Foreclosures in America"; documents alleging fraud by Quicken Loans; documents alleging misconduct by Minnehaha County employees; Land Patent documents; historical documents relating to certain land; a complaint to the South Dakota Bar; documents recounting Plaintiff's interactions concerning certain real property; and other documents purporting to explain land transactions and challenge the implementation of real estate financing in the United States. Plaintiff also includes sections of codes from various jurisdictions, (id., PgID 211), and excerpts from the treatise American Jurisprudence. (Id., PgID 226).

Plaintiff's Complaint alleges serious misconduct against Walters in connection with a mortgage through Quicken Loans for $159,993.00 (Doc. 1-2, page 22/335, PgID 45). Plaintiff accuses Walters of fraud, which he says is unrebutted because Plaintiff sent Walters documents (with a red fingerprint accompanying his signature), seeking 639,732 (no dollar sign included) in gold and silver plus $10,000 for any correspondence Plaintiff received from Walters that is not a response to his demands. (Id., page 78/335, PgID 101). Other affidavits

concerning Walters are included in the attachment. (Id., PgID 109, 115). Plaintiff asserts Walters' silence is dishonor and acquiescence to Plaintiff's assertions. (Id., page 92/335, PgID 115). Apparently, Walters did not respond to these mailings from Plaintiff, (id., PgID 10), but a Quicken Loans employee named Sashae Harris did. (Id., PgID 121). Plaintiff's response was that Harris' response was "fraudulent." (Id., PgID 123).

Plaintiff did not join Quicken Loans as a defendant. The allegations and damages sought from Walters appear to be based on his alleged individual liability to Plaintiff. There is no indication Walters dealt with Plaintiff in connection with the loans or in any other way. (Doc. 25, PgID 498).

Plaintiff filed his lawsuit against all Defendants on July 18, 2022. Service of process is described in Doc. 6. With respect to Bob Walters, on July 26, 2022, a process server in Detroit, MI, attempted to serve Walters at an office building, but was prevented from doing so by a security guard. (Doc. 6, PgID 376). On August 1, 2022, Debra Roth (indicated as Plaintiff's wife on a marriage license in Doc. 1-2, PgID 170), mailed copies of the Complaint to Walters at two addresses in Michigan by priority mail. (Doc. 6, PgID 374-75). In his motion for default judgment filed on November 21, 2022, Plaintiff attached a letter to him from Timothy R. Rahn, an attorney at Ballard Spahr, LLP, in Sioux Falls, SD. The letter indicates Defendant Walters' view that the lawsuit is without merit, but also states

4

Mr. Rahn is "authorized to waive service on Mr. Walters' behalf and will agree to do so if you request such waiver" pursuant to F.R.C.P. 4(d). (Doc. 19-1, PgID 465). Plaintiff's motion also includes copies of complaints to the South Dakota Bar against five attorneys representing Defendants in this case. The baseless complaints to the bar allege serious misconduct including forgery and fraud. (Doc. 19-2, PgID 466-76).

The Court can find nothing to indicate Plaintiff sought service upon Walters under F.R.C.P. 4(d) in accordance with Defendant's offer as of the date of the filing of this Order. The Court assumes Plaintiff did not follow the waiver of service procedure or achieve personal service on Walters. Defendant Walters clarifies this is the situation because he has moved for dismissal based on insufficient service of process. (Doc. 23). As part of his motion, Defendant Walters includes a declaration from Attorney Rahn with copies of envelopes Rahn states he sent to Plaintiff, which were returned to Ballard Spahr. As noted above, Plaintiff has filed a document (Doc. 19-1) which confirms Rahn agreed to accept service for Walters in accordance with F.R.C.P. 4(d). Plaintiff did not follow through. Service in compliance with applicable statutes has not been made on Walters.

**LEGAL STANDARD**

**1. Default Judgment**

Plaintiff has moved for a default judgment, and the Court assumes this is because Defendant Walters has not responded to the Complaint. (Doc. 19). F.R.C.P. 55 governs default judgments and provides in (b)(1) that the clerk of court must enter a default judgment if the claim is for a sum certain or a sum that can be made certain by computation. The Rule further states that "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. Pro. 55(b)(2).

The Eighth Circuit has discussed the prerequisites for entry of a default judgment in several helpful cases. In *Glick v. Western Power Sports*, the Court addressed a situation involving two defendants sued in conjunction with a neck brace that failed. 944 F.3d 714 (8th Cir. 2019). One defendant answered the complaint and succeeded in obtaining a dismissal under F.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The other defendant did not answer initially, but did so in conjunction with filing a Rule 12(b)(6) motion. The district court denied the plaintiff's motion for default judgment, reasoning that although the defendant's Rule 12(b)(6) motion was untimely, the complaint failed to state a claim against the defendant. *Id.* at 718. The Eighth Circuit affirmed, reiterating the general rule that, while a district court may enter a default judgment as appropriate, it is "incumbent upon the district court to ensure that the unchallenged facts constitute a legitimate cause of action prior to entering final judgment." *Id.* (quoting *Marshall v. Baggett*, 616 F.3d 849, 852-53 (8th Cir. 2010)). The court concluded the factual allegation

6

in the complaint was insufficient to state a claim for relief and found the district court had not abused its discretion in dismissing. *Id.*

In *Martinizing International, LLC v. BC Cleaners*, the court addressed a similar problem and reinforced the rule that a party in default "does not admit mere conclusions of law" and the court must determine that the plaintiff has shown in its complaint that it is entitled to relief. 855 F.3d 847, 850 (8th Cir. 2017) (quoting *Marshall*, 616 F.3d at 853). In reviewing the record, the Eighth Circuit commented that the "most notable aspect" of the case was that the allegations in the complaint were "directly contradicted" by the terms of the agreement appended to the complaint. *Id.* As a result, the plaintiff's effort to impose personal, rather than corporate liability, failed and the motion for default judgment was properly denied. *Id.* at 852.

Both *Glick* and *Martinizing* rely on *Marshall*, which is instructive for the case at bar where Plaintiff has sued Defendant Walters in his individual capacity. In *Marshall*, the plaintiffs sued the defendant in her individual, not representative, capacity. 616 F.3d at 851. The Eighth Circuit determined it was error for the district court to enter a default judgment against her because there was no theory supporting individual liability. *Id.* at 853 (citing *Nishimatsu Constr. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206-07 (9th Cir. 1975) (contract attached to complaint defeated plaintiff's claim of individual liability)). The court explained

7

that the district court must consider "whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* (quoting *Murray v. Lene*, 595 F. 3d 868, 871 (8th Cir. 2010)). See also *Thomson v. Wooster*, 114 U.S. 104, 113 (1884) (default judgment is unassailable on the merits but only if supported by well-pleaded allegations, assumed to be true).

## 2. Service of Process

Defendant Walters has moved to dismiss based on insufficient service of process, Rule 12(b)(5). (Doc. 23). Federal Rule of Civil Procedure 4-*Summons* provides the procedures for serving defendants in a civil case, and as pertinent to the case at bar states that an individual within a judicial district of the United States may be served by the following:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
> 　　(A) delivering a copy of the summons and of the complaint to the individual personally;
> 　　(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> 　　(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

The Rule does not authorize service through regular mail and such a means of service has been deemed inadequate. *Larsen v. Mayo Med. Center*, 218 F.3d 863,

868 (8th Cir. 2000) (citing *Alholm v. American Steamship Co.*, 144 F. 3d 1172, 1176 (8th Cir. 1998)); *Lu v. SAP America, Inc.,* 2022 WL 13983546, * 4-5 (6th Cir. 2022) (sending by mail is not equivalent of serving complaint).

Pursuant to F.R.C.P. 4(d), service may be waived. The purpose of the waiver of service provision is to "avoid unnecessary expenses of serving the summons." Fed, R. Civ. P. 4(d). A defendant who fails to waive service may have the costs of service imposed upon him or her. *Id.* § 4(d)(2).

Rule 4 also sets the time frame for service and provides in pertinent part that "if a defendant is not served within 90 days" of the filing of the complaint, the court "must dismiss the action without prejudice" or order service within a specified time. If the plaintiff shows "good cause" for the failure of service, the court must extend the time. Fed. R. Civ. P. 4(m).

In South Dakota, S.D.C.L. § 15-6-4(d)(8) requires delivery of the summons to the defendant personally. Substitute service can be accomplished in accordance with SDCL § 15-6-4(e) by leaving a copy at the defendant's dwelling with a person over the age of fourteen who resides there. Service by mailing a copy is not contemplated by SDCL § 15-5-4 as sufficient. Failure to comply with the rules governing service of process can result in dismissal. *Marshall v. Warwick*, 155 F.3d 1027, 1030 (8th Cir. 1998).

The rules for service in Michigan, where Defendant Walters resides, are similar but not identical to the South Dakota rules. According to the Michigan Rules of Court, "Process may be served... by delivering a summons and a copy of the complaint to the defendant personally" or sending the summons by "registered or certified mail, return receipt requested." Mich. Ct. R. 2.105(A). Service is made "when the defendant acknowledges receipt of the mail." *Id.* An alternative method of service is available to the plaintiff at the discretion of the court. *Id.* § (J). Improper service will not result in dismissal if the defendant was informed of the action, § (K)(3), although the Michigan courts assess whether or not good cause excuses the improper service and order dismissal where it is lacking. See, e.g., *Koehn v. 313 Presents, LLC*, 2023 WL 36065, *2 (E.D. Mich. 2023); *Perlick Corp. v. Glastender, Inc.*, 2022 WL 3568983, *2 (E.D. Mich. 2022); *Harris v. Smith*, 2022 WL 296 1526, *3 (E.D. Mich. 2022) (pro se plaintiff rebuffed efforts to correct service). See also *Lu*, 2022 WL 13983546, at * 4-5.

### 3. Jurisdiction over the Person

Defendant Walters has moved to dismiss for lack of personal jurisdiction, Rule 12(b)(2). Many courts have explained the requirements for establishing that a court may exercise jurisdiction over a party to a case. See generally *Ford Motor Company v. Montana Eighth Judicial District Court*, __ U.S. ___, 141 S.Ct. 1017, 209 L.Ed.2d 225 (2021). The Eighth Circuit has issued numerous decisions on the

topic, including *Steinbuch v. Cutler*, where the court commented about the factual requirements as follows: "To survive a motion to dismiss, the plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to jurisdiction in the forum state." 518 F.3d 580, 585 (8th Cir. 2008). Plaintiff has the burden to establish personal jurisdiction if it is contested. *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2009).

With respect to the legal determination of personal jurisdiction, the courts use a two-step analysis which requires first, that the applicable state long-arm statute must be satisfied, and second, the court's exercise of jurisdiction must comport with due process. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995). As this Court noted in *Huff v. City of Brookings Police Dept.*, South Dakota construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the Due Process Clause. 2022 WL 2528255, *4 (D.S.D. 2022) (citing *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)). Therefore, the analysis focuses on due process. *Id.*

In *Fastpath, Inc. v. Arbela Technologies Corp.*, the Eighth Circuit cited the leading cases on the subject to reinforce that "due process requires that a non-resident have minimum contacts with the forum state such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial

11

justice." 760 F.3d 816, 820 (8th Cir. 2014) (citing *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 291-92, 100 S.Ct. 559, 564-65, 62 L.Ed.2d 490 (1980); *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Guinness Import Co. v. Mark VII Distribs., Inc.,* 153 F.3d 607, 614 (8th Cir.1998)). See also *Ford Motor Company*, 141 S.Ct. at 1024-25. The notion of minimum contacts is based on the premise that "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *Fastpath*, 760 F.3d at 820 (quoting *J. McIntyre Mach., Ltd. v. Nicastro,* —— U.S. ——, 131 S.Ct. 2780, 2787, 180 L.Ed.2d 765 (2011)). *Fastpath* provided additional guidance, stating that "a defendant's contacts with the forum state must be sufficient so that a non-resident defendant should reasonably anticipate being haled into court there." *Id.* at 820-21 (citing *World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567; *Stanton v. St. Jude Med., Inc.,* 340 F.3d 690, 694 (8th Cir. 2003); *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 648 (8th Cir. 2003)). The court added that sufficient minimum contacts can be established if the defendant "purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 821 (citing *J. McIntyre Mach.,* 131 S.Ct. at 2787, quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2

L.Ed.2d 1283 (1958)). See *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir.

2004) (analyzing minimum contacts of individual defendant).

In *Kaliannan v. Liang*, the court reiterated that in evaluating personal

jurisdiction under the Due Process clause, a five-factor test is used to determine the

sufficiency of a non-resident defendant's contacts with the forum state. 2 F.4th 727,

733 (8th Cir. 2021) (citing *Whaley v. Esebag*, 946 F.3d 447, 452 (8th Cir. 2021)).

The five factors are: 1) the nature and quality of contacts with the forum state; 2)

the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4)

the interest of the forum state in providing a forum for its residents; and 5)

convenience of the parties. *Id*. at 733. See also *Fastpath*, 760 F. 3d at 821; *Dever v.*

*Hentzen Coatings*, 380 F.3d at 1073-74 (8th Cir. 2004) (quoting *Burlington Indus.,*

*Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir.1996)). *Kaliannan* added

that the court gives significant weight to the first three factors. 2 F.4th at 733. See

*Huff*, 2022 WL 2528255, *5.

When the question before the court involves jurisdiction over corporate

employees, the Supreme Court has made clear that the employee's contacts are not

to be judged by the corporation's activities in the forum; rather, the court must look

at the degree to which the employee personally participated in the alleged

wrongdoing. *Kooima v. Zacklift Intern., Inc.*, 2002 WL 34458064, *2 (D.S.D.

2002) (citing *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804

(1984) (*citing Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516

(1980))).  *See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781 n. 13, 104 S.Ct.

1473, 79 L.Ed.2d 790 (1984) ("[J]urisdiction over an employee does not

automatically follow from jurisdiction over the corporation which employs him.").

## ANALYSIS

### 1. Default Judgment

Although Rule 55(b) permits a court to enter a default judgment, the court

may not do so without ascertaining whether the complaint's "unchallenged facts

constitute a legitimate cause of action." *Marshall*, 616 F.3d at 853.  The Court has

examined Plaintiff's complaint and determines that its allegations do not meet that

standard. For example, the complaint seeks damages that are not legitimate, as

Plaintiff seeks gold and silver, not dollars, to satisfy his claim against Walters of

"2,091,600.00 lawful dollars."  No facts support damages of any amount, much

less this amount in this form.

Plaintiff also makes allegations of extortion, fraud, and other serious

misconduct that are unsupported by the facts.  He cites a loan from Quicken Loans

(Doc. 1, PgID 2), then presents his theory that there is no contract and asserts

"alleged mortgage lenders do not loan lawful money, legal tender, currency,

deposits and they cannot loan credit." (Id., PgID 33).  He asserts that Defendant

and Quicken Loans, Inc., have only shown willful intent to continue to "Harm and

Damage" apparently because he called the company for information and did not receive it. (Id., ¶ 55, PgID 10).  He asserts, "The willful intent of Bob Walters and Quicken Loans Inc. representative's is to continue harm and damage by collecting FEDERAL RESERVE NOTES, by treats of stealing my property with bad faith, without lawful valuable consideration through an unlawful foreclosure." (Id., ¶ 52).  Plaintiff's RICO claim, (id., PgID 17), invokes "universal imperatives" but does not plead any of the elements of such a claim including an enterprise, pattern, racketeering activity, or conspiracy to commit such actions. 18 U.S.C.  §§ 1962, 1964. See *Crest Const. II v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (discussing pleading requirements for RICO claims).  Mail fraud and other types of misconduct are listed in lengthy subparts of the Complaint at paragraphs 95-97, (id., PgID 17-19), but there is no explanation of how those actions may have been committed or by whom. Plaintiff's remaining causes of action are equally indecipherable in that they incorporate these paragraphs of the Complaint noted in the RICO context. (Id.).

Review of Plaintiff's Complaint makes clear that the Complaint's "unchallenged facts" do not "constitute a legitimate cause of action." *Marshall,* 616 F.3d at 853.  Therefore, the Court denies Plaintiff's motion for default judgment against Walters. (Doc. 19).

**2. Service of complaint**

15

Defendant Walters endeavored to comply with the provisions of F.R.C.P. 4 by waiving service. (Doc. 19-1; 24). Plaintiff failed to take advantage of the Defendant's offer.  He appears to have relied on Debra Roth's having mailed the Complaint and the process server having left it at an office.  These actions by the Plaintiff are insufficient to obtain service, which must be done within 90 days of filing the action in accordance with F.R.C.P. 4(m).

Although a court may dismiss a complaint filed by a plaintiff who fails to complete service as Rule 4 directs, it is clear the Court can refrain from doing so, particularly where the plaintiff is pro se. The Advisory Committee Notes (1993 Amendment) to this provision of Rule 4 cite *Robinson v. America's Best Contacts & Eyeglasses*, 876 F.2d 596, 598 (7th Cir. 1989) (where plaintiff lacked filing fee on date of filing but paid it subsequently, court abused discretion by dismissing pro se complaint).  See also *Virtivarian v. Golden Rule Ins. Co.,* 962 F.2d 11(Table) (7th Cir. 1992) (good cause supported extension of time for obtaining service of process and precluded dismissal on that basis).

"Good cause" was described in *Kurka v. Iowa County, Iowa*, as follows:  "[G]ood cause is likely (but not always) to be found when [1] the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, [2] the defendant has evaded service of the process or engaged in misleading conduct, [3] the plaintiff has acted diligently

16

in trying to effect service or there are understandable mitigating circumstances, or

[4] the plaintiff is proceeding pro se or in forma pauperis." 628 F.3d 953, 957 (8th

Cir. 2010) (quoting 4B Charles Alan Wright & Arthur R. Miller, FEDERAL

PRACTICE AND PROCEDURE § 1137, at 342 (3d ed. 2002)). See also

*Ballegooyen v. Brownson*, 2016 WL 5794719, *3 (D.S.D. 2016). The case before

the Court is similar to that in *Scofield v. Fishback Financial Corp.*, 2010 WL

2464860, *7 (D.S.D. 2010). There, plaintiff was put on notice of defective service

when defendant offered to waive service in accordance with Rule 4(d). Rather

than cure and serve, plaintiff rejected defendant's offer and did nothing more to

accomplish service. As the court pointed out, when a plaintiff avoids an obvious

means of correction, "good cause" is lacking if the method of service fails. *Id.*

(citing *Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F. 3d 882, 887 (8th Cir.

1996)). See generally, *Heisinger v. CJ Ventures, LLC*, 2009 WL 790202, *3-4

(D.S.D. 2009).

Good cause is absent in this case. Attorney Rahn offered to accept service,

although he was not required to do so, thus indicating there was no effort by

Walters to evade service. Rahn advised Plaintiff of the civil procedure rule that

should be followed. Plaintiff refused to take the path Rahn made available to him.

Instead, Plaintiff relied on his wife's having used regular mail to send the

complaint to Walters. As noted above, this is insufficient under both the federal

17

and pertinent state rules. The Court has considered Plaintiff's pro se status, and while that might be sufficient to find "good cause" under certain circumstances, it is not sufficient to overcome the factors recited above that indicate good cause has not been established. That finding, coupled with the Court's decision below on jurisdiction over the Defendant, leads to the further determination that Plaintiff will not be given an opportunity to cure the service.

### 3. Personal jurisdiction

Plaintiff must allege facts to support the Court's exercise of personal jurisdiction over Walters, and the latter has to have established minimum contacts with South Dakota. *Ford Motor Company,* 141 S.Ct. at 1024-25. Plaintiff has not cited facts to establish that the Court can exercise personal jurisdiction over Defendant, and according to Defendant's declaration, none exist. Walters resides in Michigan, and as an individual, has no personal or business ties to South Dakota. (Doc. 26). Plaintiff's complaint does not allege any conduct by Defendant at all, much less in South Dakota, that would establish personal jurisdiction related to this lawsuit.

In assessing the five factors set forth in *Kaliannan,* the Court first must guage the nature and quality of Walters' contacts with South Dakota. 2 F.4th at 733. Plaintiff alleges none with respect to Walters' individually, and Walters asserts he has no contacts with the state. (Doc. 26). He has not conducted personal

18

business in South Dakota, does not reside in the state, does not own property in the state, and has not conducted business personally with Plaintiff. (Id.). *Kaliannan's* second factor is to assess the quantity of contacts; here the quantity is zero. Third, the cause of action does not relate to the contacts because there are no contacts. These factors weigh so strongly against finding personal jurisdiction over Walters as an individual, that the Court finds it would violate due process to "hale him into court" individually in this state. *World-Wide Volkswagen,* 444 U.S. at 297.

**Conclusion**

For Plaintiff to prevail in his motion for default judgment against Defendant Walters, his complaint must have merit. His complaint lacks merit, and his motion for default judgment is denied on that basis. (Doc. 19).

Defendant Walters has moved to dismiss both for insufficient service of process, Rule 12(b)(5), and for lack of personal jurisdiction, Rule 12(b)(2). (Doc. 23). The Court finds it lacks personal jurisdiction over Defendant Walters and grants his motion to dismiss under Rule 12(b)(2). (Doc. 23). The Court also finds the service was insufficient, and that Plaintiff failed to take advantage of the offer to cure it. The Court finds good cause for the defective service is lacking and refrains from ordering Plaintiff to cure it given the Court's determination it lacks personal jurisdiction over Walters. Therefore, the Court grants Defendant's motion to dismiss for insufficient service, Rule 12(b)(5). (Id.).

Accordingly, IT IS ORDERED that

1. Plaintiff's motion for default judgment against Defendant Walters (Doc. 19) is

denied; and

2. Defendant Walters' motion to dismiss (Doc. 23) is granted.

Dated this ____ day of January, 2023.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK